SHUBERT ORGANIZATION, INC., et al., Appellants, v LANDMARKS PRESERVATION COMMISSION OF THE CITY OF NEW YORK et al., Respondents, and SAVE THE THEATRES, INC., Intervenor-Respondent.

First Department, May 16, 1991

116

**APPEARANCES OF COUNSEL**

*Alvin M. Stein* of counsel *(Amos Alter* and *Sharon H. Stern*

with him on the brief; *Parker Chapin Flattau & Klimpl,* attorneys), for The Shubert Organization, Inc. and others, appellants.

*Allen G. Schwartz* of counsel *(Gregg M. Mashberg* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for Nederlander Organization, Inc. and others, appellants.

*Kristin M. Helmers* of counsel *(Leonard Koerner, Virginia Waters* and *Dorothy Miner* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for municipal respondents.

*Mitchell S. Bernard* of counsel *(Natural Resources Defense Council,* attorney), for intervenor.

*John J. Kerr, Jr.,* of counsel *(Nancy B. Mallery* and *Howard G. Sloane* with him on the brief; *Simpson Thacher & Bartlett,* and *Cahill Gordon & Reindel,* attorneys), for National Trust For Historic Preservation and others, *amici curiae.*

### OPINION OF THE COURT

ASCH, J.

Petitioners, several theatre owners as well as trade organizations, had sought, *inter alia,* in this declaratory relief and CPLR article 78 proceeding, to annul the designation of 22 Broadway theatres as landmarks, and to declare null and void the underlying landmarks legislation and the antidemolition provision of the New York City Zoning Resolution.

Petitioners claim that the designation process in this case manifested an improper exercise in spot zoning, rather than a detailed analysis leading to the designation of a specific building or buildings as historic landmarks. The municipal respondents counter that the different, respective, decisions of the Landmarks Preservation Commission and the Board of Estimate, were based on exhaustive studies and reports, as well as public discussion on notice, and that the final vote of the Board of Estimate, although accomplished expeditiously, was not simply expediently arrived at and and was supported by a rational basis.

The present challenge is both for a declaratory judgment, invoking the constitutional challenge, and on article 78 grounds *(see generally,* 2 Morris, New York Practice Guide: Real Estate, Land Use Regulation, § 17.05 [3] [b] [vi] [A]). The Landmarks Law (Administrative Code of City of New York, tit

25, ch 3) seeks to protect those buildings, structures and landscape features which have a special character or have special historic or aesthetic interest or value. The statutory vehicle for protection is either a designation as landmarks or their inclusion within historic districts. There is a distinction between the criteria for designation of an individual landmark or an interior landmark, on the one hand, and the criteria for designation of an historic district, on the other hand. *(Id., § 17.05 [3] [b] [vii] [B], [C].)*

In December of 1967, the Board of Estimate approved the City Planning Commission's proposal to create a special theatre district, to protect the district from the expansion of midtown construction. The special district roughly approximated the Times Square area. The City Planning Commission sought to encourage the construction of new theatre space in newly constructed building by giving a bonus with respect to the utilization of space. The city as well as the State Office of Parks, Recreation and Historic Preservation, entered a memorandum of agreement with the Federal Government which required the city to begin consideration of landmark status for theatre buildings within the Broadway theatre district. The Landmarks Preservation Commission selected 35 theatres for potential designation, which included the 22 theatres relevant to this appeal. The municipal authorities took heed of the public outcry following the demolition of the Helen Hayes and Morosco Theatres in 1982 and subsequently, the midtown zoning amendments to the Zoning Resolution targeted Broadway theatres to enhance their preservation. The zoning amendment continued the space use bonuses for construction of new theatres, and gave bonuses for the rehabilitation of specified theatres. Special permits for demolition were required as to 44 listed theatres.

The Landmarks Preservation Commission calendared public hearings to consider the designation of 45 Broadway theatres. These were scheduled in June of 1982, to allow preparation of reports on the historical, cultural, and architectural significance of the individual theatres. Respondents contend that the petitioners received individual notice and offered testimony. While not required as part of the process, Community Board 5 eventually voted in favor of landmark designation for all of the listed theatres. The record was kept open for additional comments and petitioners' architect submitted a report, analyzing the listed theatres. From April 21, 1984 through January 5, 1988, the Landmarks Preservation Commission held 29

public executive sessions for consideration of the subject designations. On August 6, 1985, the Commission designated exteriors and/or interiors of three theatres as landmarks.

In December of 1985, and March of 1987, respectively, the Landmarks Preservation Commission compiled two reports on preservation of the Broadway theatres and guidelines therefor. The record shows that the Landmarks Preservation Commission consistently received copious materials from numerous sources emphasizing the unique qualities, as set forth by the statutory criteria, relevant to each theatre. There is also evidence that at many of the executive sessions, a staff member would present the cultural, historical, architectural, and/or aesthetic value of each of the listed theatres. Further, a 35-to-40-page designation report was prepared for each building. Each theatre was then addressed, in alphabetical order, at public executive sessions commencing November 4, 1987. Respondents note that again petitioners were given notice and attended the meetings. Between November 4, 1987 and January 5, 1988, the Landmarks Preservation Commission designated the interior and exterior of nineteen of the listed theatres, the interior of 7 theatres, and the exterior of 2 more theatres. Thirteen theatres were not designated during this process. Of the 28 designated theatres, petitioners own 22; of the 13 nondesignated theatres, petitioners own 10. Within five business days of each designation, the Landmarks Preservation Commission filed the designation reports with the Board of Estimate. After a public hearing, the Board of Estimate ratified the designations of all of the listed theatres in a single vote. Respondents note that this practice of a single vote on related matters has been the usual procedure of the Board of Estimate since 1950, and is the norm for approving or disapproving landmark designations.

After the Board of Estimate approved these matters, in October of 1987, the Landmarks Preservation Commission issued 47 landmark designations for 28 theatres, in alphabetical order, which gave rise to the present action. (Some theatres are landmarked as to interior as well as exterior.)

Petitioners assert that the landmark designations, both interior and exterior, have had detrimental effects on the owners' ability to adapt theatres to changing productions and changing times. They also submit there is a cost factor borne by the owners, in keeping up the theatres, and by producers who use the landmarked theatres.

Further, petitioners attack the voting procedure of the Board of Estimate when, in approving these designations, it exercised a single roll-call vote. Petitioners argue that these are separate structures with no common architectural style and thus the single roll-call vote underscores their contention that the purpose was to preserve the theatre industry by means of sham designations. Petitioners note the boilerplate introduction to the description and analysis in each report for each theatre, as bearing untoward uniformity. Petitioners also emphasize their contention that this was protection of an industry, rather than of individual buildings, by noting that those theatres within the theatre subdistrict which were not landmarked were not currently in use as legitimate theatres, or otherwise were protected from demolition. Further, petitioners argue that the aesthetic, cultural, and architectural attributes of the landmarked, and the nonlandmarked theatres are essentially indistinguishable.

Petitioners then challenge the procedure in Supreme Court where the court refused to hold an evidentiary hearing. The hearing, characterized as evidentiary, would have inquired into whether the Board of Estimate followed routine procedure in having a single roll-call vote. However, on appeal, petitioners argue that an evidentiary hearing would have inquired into whether evidence existed that the city was seeking to regulate the theatre industry as a whole, in violation of the mandates of the various agencies.

■ This court is circumscribed by the scope of judicial review of administrative determinations. It is well established that the court may not substitute its judgment for that of the administrative body *(see generally,* with respect to landmarks, *Matter of Society for Ethical Culture v Spatt,* 68 AD2d 112 [1st Dept 1979], *affd* 51 NY2d 449). This court has already noted the particular expertise of the members of the Landmarks Preservation Commission *(supra,* at 117; *accord, Matter of Committee to Save Beacon Theatre v City of New York,* 146 AD2d 397, 405 [1st Dept 1989]). Considering the wealth of analyses and reports, as well as anecdotal testimony, provided to the Landmarks Preservation Commission prior to the subject designations, it appears to be beyond serious challenge that a reasonable basis existed for the designations as to each theatre, upon a consideration of the statutory criteria.

There is no basis to argue that the proposals were "railroaded" through the Landmarks Preservation Commission; the preliminary analyses and reports were exhaustive, the

decision making occurred over the course of several years. Three days of public hearings simply concluded the input into the decision making, and the final decisions do not appear to have been arrived at with any great dispatch. While petitioners complain of the limited time allowed to them for comments before the Board of Estimate, there is no indication that they were deprived of a meaningful opportunity to submit their own reports or comments prior to the Board of Estimate hearing, particularly at the Landmarks Preservation Commission phase of proceedings.

■ Further, there is criticism by petitioners of the single roll-call vote by the Board of Estimate. But, the Board had received individual reports, as well as the Planning Commission reports, prior to the Board of Estimate hearing. Finally, in this regard, we note, as mentioned above, that since the 1950's the Board had routinely entertained a single vote on similar matters, particularly those involving zoning and landmark designations.

Manipulation of the Landmarks Law by the Landmarks Preservation Commission only for the purpose of preserving the Broadway theatre industry, rather than individual theatres, would have been improper (see, Landmarks Law [Administrative Code] § 25-304 [a]). Such a practice would misconstrue zoning matters for landmark matters. However, notwithstanding the district within which the theatres stand, the designation proceedings addressed the exteriors and/or interiors of the specific buildings in terms of the criteria of the Landmarks Law. (See generally, Penn Cent. Transp. Co. v New York City, 438 US 104, 133, affg 42 NY2d 324, 329-330.) Municipal respondents point out that the Landmarks Preservation Commission has designated theatres which are located outside of the Broadway District, such as the Apollo, the Beacon, City Center, Carnegie Hall, and Town Hall, on the basis of the same statutory criteria. This is further evidence that the Landmarks Preservation Commission was not seeking to protect the Broadway theatre industry by sham designations.

Accordingly, we agree with the nisi prius court that the administration determination was based on substantial evidence, was not arbitrary and capricious and did not violate the law.

■ With respect to the constitutional challenge, the Penn Cent. case (supra), established the constitutionality of the

Landmarks Law. Petitioner's challenge, that *Penn Cent.* is not controlling since it did not address the method of designation is without merit. *Penn Cent.* involved the alteration of a landmark, a restriction which arises out of the designation. Since the Supreme Court in *Penn Cent. (supra,* 438 US, at 138) clearly ruled that the application of the Landmarks Law does not affect a taking of the property, the constitutional challenge thereby is resolved. Further, under the standards set forth in *Spears v Berle* (48 NY2d 254, 263) and *de St. Aubin v Flacke* (68 NY2d 66, 76), the petitioners have not carried their burden of demonstrating that the Landmarks Law as applied to these particular theatres denies them essential use of their property.

Finally, with respect to the constitutional argument, the scheme of law embodied in the Landmarks Law serves a legitimate purpose of saving historical landmarks *(see, Seawall Assocs. v City of New York,* 74 NY2d 92, 112, *cert denied —* US —, 110 S Ct 500 [1989]). With respect to any claim that petitioners are deprived of any economic use of their property, in the absence of final agency action on applications by petitioners for renovations or alterations, the matter is not ripe for review *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 520; *see,* permit provisions for alterations or demolitions in Landmarks Law [Administrative Code] §§ 25-306, 25-307). In the meantime, there is no prohibition against petitioners receiving economic benefit from continuing the use of the buildings as theatres *(accord, Penn Cent. Transp. Co. v New York City, supra,* at 136). In any event, transferable development rights inure to the owners of these buildings, which, absent a successful challenge, must be presumed to have economic benefit. We note that some of petitioners, in fact, have made use of these transferable developmental rights.

■ Petitioners also challenge the provision of the Zoning Resolution (NY City Zoning Resolution § 81-742) which requires listed theatres to obtain a special permit from the City Planning Commission for demolition. This, of course, is a zoning matter, rather than a landmark matter. Petitioner bears the heavy burden of demonstrating the unconstitutionality of the zoning ordinance *(Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 344) and discriminatory effects of a statute will not render the statute invalid if there exists a reasonable basis *(Lighthouse Shores v Town of Islip,* 41 NY2d 7, 12). There is no evidence that this provision

is not based on a comprehensive plan and, as municipal defendants point out, similar demolition permits are required by the Zoning Resolution in several other special districts.

■ Finally, considering the narrow scope of review available to the court below, it cannot be said that with the volumes of documentary evidence in the record and supporting affidavits, that there was a need to conduct an evidentiary hearing to examine whether the Board of Estimate's voting mechanism was arbitrary and capricious, or in violation of law. Since the court was not empowered to substitute its own judgment for that of the administrative body, the only inquiry was whether the record, as submitted, supported the voting procedure and the determination. We agree that it did.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered February 6, 1990, which denied petitioners' motion for summary judgment, granted summary judgment to municipal respondents, and dismissed the petition and complaint, should be affirmed, without costs or disbursements.

MILONAS, J. P., WALLACH, KASSAL and SMITH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on February 6, 1990, affirmed, without costs or disbursements.