MOORE, Judge.
*604 This court's opinion of May 5, 2017, is withdrawn, and the following is substituted therefor.
Shoal Creek Land & Cattle, LLC ("Shoal Creek"), appeals from a judgment entered by the Marshall Circuit Court ("the circuit court") upholding a determination of the City of Arab Historic Preservation Commission ("the AHPC") denying an application by Shoal Creek for a certificate of appropriateness ("COA"). We reverse the judgment.
Background
In 2009, Shoal Creek purchased a building ("the building") in downtown Arab. In January 2014, the City of Arab established the City of Arab Downtown Historic District ("the historic district"), see City of Arab Ordinance No. 2014-4, which included the area in which the building is located. In October and November 2014, Shoal Creek replaced four of the second-floor windows of the building. The AHPC discovered the modifications and directed Shoal Creek to file an application for a COA. See Ala. Code 1975, § 11-68-9(a) ("No change in the exterior appearance of ... any building ... within an historic district may be made[ ] ... unless and until a certificate of appropriateness for such change ... is approved by the historic preservation commission created by the municipality designating the historic property or the historic district."). Shoal Creek filed the COA application, which the AHPC denied on November 25, 2014.[1]
The AHPC meeting minutes from November 25, 2014, indicate that the AHPC denied the COA application on the ground that the replacement windows "do not meet the approved window guidelines." On November 26, 2014, the AHPC sent a letter to Shoal Creek explaining that the AHPC had denied the application for the COA for the following two reasons:
"1. The windows you selected were inappropriate in material choice and glazing pattern. Historic photos indicate that the original windows appeared to be double hung, wooden sash windows. The windows you selected were vinyl, vertical gliding windows.
"2. The work you undertook on the building was not in keeping with the general historic character of your building or the Downtown Arab Historic District of which it is a part ...."
At trial, Michael Gullion, the chairperson of the AHPC, testified that the AHPC had denied the COA for the two reasons quoted above.
Gullion specifically testified that the windows violated the window-design standards contained on page 21 of the AHPC's "General Design Guidelines," which provide, in pertinent part:
"b. Standards for Rehabilitation and Alteration.
"The following standards shall be applied to all rehabilitation or alteration of contributing buildings and structures in the district.
"....
*605 "8. Windows "• Maintain the original number, location, size, and glazing pattern on primary building elevations, "• Maintain historic window openings and proportions. "... Inappropriate: "... •Aluminum or vinyl"
Gullion testified that, in violation of the window-design standards set forth above, the replacement windows installed by Shoal Creek contained vinyl and did not maintain the glazing pattern of the original windows installed in the building.
On January 5, 2015, Shoal Creek filed a notice of appeal to the circuit court.[2] See Ala. Code 1975, § 11-68-10, and City of Arab Ordinance No. 2013-1, § V(O ). On February 5, 2015, the City of Arab and the AHPC filed an answer and counterclaimed for injunctive relief. On March 3, 2015, Shoal Creek filed a reply to the counterclaim.
After a trial, the circuit court entered a final judgment on May 10, 2016, upholding the AHPC's decision to deny the application for a COA and ordering Shoal Creek "to install appropriate windows, as approved by [the AHPC,] and [notifying Shoal Creek] that further changes to the structure shall be in compliance with the City of Arab's Historic Preservation Ordinance." On June 9, 2016, Shoal Creek filed a postjudgment motion, which the circuit court denied on July 15, 2016. On August 26, 2016, Shoal Creek filed its notice of appeal to the supreme court, which deflected the appeal to this court. See Ala. Code 1975, § 12-2-7(6).
Issues
On appeal, Shoal Creek argues that the AHPC had no discretion to deny its COA application because, it says, the AHPC's window-design standards do not apply to the building and because, it says, the AHPC exceeded its authority by requiring Shoal Creek to restore the windows to their original, 1930s appearance. We find the first issue to be dispositive, so we do not address the second issue.
Discussion
City of Arab Ordinance No. 2013-1 ("the 2013 ordinance") and City of Arab Ordinance No. 2014-4 ("the 2014 ordinance") vest the AHPC with the authority to prohibit the modification of the exterior appearance of buildings within the historic district by denying an application for a COA. However, the power to deny an owner of private property the right to modify the appearance of that property must be circumscribed by uniform standards applicable to all citizens. As explained by our supreme court in Smith v. City of Mobile, 374 So.2d 305 (Ala. 1979) :
" ' "Municipal ordinances, placing restrictions upon lawful conduct, or the *606 lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct of business, and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions, and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply." ' "
374 So.2d at 308 (quoting Longshore v. City of Montgomery, 22 Ala.App. 620, 622, 119 So. 599, 600 (1928), quoting in turn City Council of Montgomery v. West, 149 Ala. 311, 314, 42 So. 1000, 1000-01 (1907), quoting in turn City of Richmond v. Dudley, 129 Ind. 112, 28 N.E. 312, 314 (1891) ).
Section 11-68-9(c), Ala. Code 1975, provides that "[t]he [historic preservation] commission shall adopt general design standards which shall apply in considering the granting and denial of certificates of appropriateness." Section 11-68-11(a), Ala. Code 1975, provides, in pertinent part:
"The historic preservation commission shall approve an application and issue a certificate of appropriateness if it finds that the proposed change, erection, or demolition conforms to the general design standards established by the commission, is compatible with the character of the historic property or historic district and does not detract from the value of the historic property or historic district."
(Emphasis added.) The legislature intended that historic preservation commissions should formulate design standards by which the commissions would adjudge whether a proposed change should be permitted to the exterior appearance of a building within a historic district. The design guidelines represent the specific rules and conditions to which owners of buildings within a historic district must comply and control the discretion of a historic preservation commission by establishing certain standards that the commission must follow in denying an application for a COA in order to prevent it from arbitrarily discriminating against citizens based on vague or unspecified criteria. See Smith, supra.
Section V(I) of the 2013 ordinance complies with § 11-68-9(c) by requiring the AHPC to adopt general design standards that "shall apply in considering the granting and denial of Certificates of Appropriateness." The AHPC complied with the law and the 2013 ordinance by adopting "General Design Guidelines" on April 8, 2014. Article VII, § 2.b.8., containing the window-design standards at issue in this case, provides, in pertinent part:
*607 "b. Standards for Rehabilitation and Alteration. "The following standards shall be applied to all rehabilitation or alteration of contributing buildings and structures in the district. ". . . . "8. Windows "• Maintain the original number, location, size, and glazing pattern on primary building elevations, "• Maintain historic window openings and proportions. ". . . Inappropriate: ". . . •Aluminum or vinyl"
Michael Gullion, the AHPC chairperson, testified that the AHPC denied the application for a COA filed by Shoal Creek because Shoal Creek had violated the window-design standards by installing vinyl windows with a different glazing pattern than that contained in the original windows installed in the 1930s.
Shoal Creek points out that the window-design standards fall within the "Standards for Rehabilitation and Alteration," which apply solely to "contributing buildings and structures within the district." Shoal Creek argues that the window-design standards do not apply to the building because it is undisputed that the building is classified as a "noncontributing" building. When a historic preservation commission establishes a historic district, it must classify every building within the district as either "contributing," meaning that it "contributes to the district," or "noncontributing," meaning that it "does not contribute to the district." 2013 ordinance, § IV(B)(3). The AHPC classified the building as "noncontributing" because the exterior appearance of the building had been substantially modified from its original 1930s condition. Shoal Creek contends that the AHPC window-design standards did not prohibit it from replacing the windows in the building, a noncontributing building, using the vinyl material and glazing pattern it selected. We agree.
The "Standards for Rehabilitation and Alteration" "shall be applied to all rehabilitation or alteration of contributing buildings and structures in the district." (Emphasis added.) As a matter of grammatical construction, the adjective "contributing" modifies both the word "buildings" and "structures," so all the rehabilitation standards apply to "contributing buildings" and "contributing structures" in the historic district. See, e.g., Ex parte State ex rel. Attorney General, 207 Ala. 585, 586, 93 So. 382, 382 (1922) (noting that the proper grammatical construction of the phrase "[a]ny intoxicating bitters or beverages by whatever name called" is that "intoxicating" modifies both "bitters" and "beverages"); see also *608 Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co., 114 Cal.App.4th 548, 554, 7 Cal.Rptr.3d 844, 849 (2003) ("Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears."); People v. Lovato, 357 P.3d 212, 221 (Colo. App. 2014) (adjective ordinarily modifies all nouns used in a conjunctive phrase); Lewis v. Jackson Energy Coop. Corp., 189 S.W.3d 87, 92 (Ky. 2005) ("[A]n adjective at the beginning of a conjunctive phrase applies equally to each object within the phrase. In other words, the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears."); In re Estate of Pawlik, 845 N.W.2d 249, 252 (Minn. Ct. App. 2014) (Under the series-qualifier canon of statutory construction, " 'when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.' " (quoting Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920) )); and Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.").
The adjective "contributing" does not modify solely the word "buildings" so that the window-design standards apply to all "structures," whether contributing or noncontributing, as Gullion testified at trial. As explained above, the legislature requires historic preservation commissions to adopt design guidelines to inform citizens within a historic district of the rules and regulations to which they must comply. A historic preservation commission must use plain language that follows the rules of grammar so that citizens can readily determine the meaning of the design standards. See generally Faulkner v. Town of Chestertown, 290 Md. 214, 228, 428 A.2d 879, 885 (1981). We must give considerable weight to a reasonable interpretation of a historic preservation commission regarding the design standards it adopts and administers, see Miller v. City of Annapolis Historic Pres. Comm'n, 200 Md.App. 612, 636, 28 A.3d 147, 161 (2011), but the AHPC cannot use a strained construction that violates basic grammatical rules in order to bring a noncontributing building within the scope of a design standard applicable to only contributing buildings.
We acknowledge that the authority of the AHPC extends to all buildings within the historic district. Section 11-68-9 expressly provides that no change to "any building" within a historic district can be made unless a COA has been approved by the governing historic preservation commission. That statute, along with the 2014 ordinance, gives the AHPC the authority to review changes to the exterior appearance of noncontributing buildings within the historic district to assure compliance with applicable design standards. Indeed, some of the passages within the AHPC design guidelines generally apply to all buildings within the historic district and other specific design guidelines adopted by the AHPC also may well apply to noncontributing buildings. However, the window-design standards, the only design standards at issue in this case, do not apply to noncontributing buildings, so we decline to address in the abstract the scope of the authority of the AHPC over such buildings.
Article III of the AHPC's design guidelines provides, in pertinent part, that "[t]he Commission shall deny a Certificate of Appropriateness if it finds that the proposed *609 work is not consistent with the Design Guidelines." The AHPC denied the COA application filed by Shoal Creek because it found that the replacement windows violated the window-design standards. The AHPC did not rely on any other provision in its design guidelines for denying the COA application. We conclude that the AHPC based its denial on a faulty interpretation of the window-design standards. The window-design standards do not provide a rational basis for the determination of the AHPC, which otherwise had no other specific criteria upon which to deny the COA application.
Because Shoal Creek did not violate the window-design standards, the AHPC could not deny its COA application on the alternative ground that the style of the replacement windows conflicted with the general historical character of the building[3] or the historic district, which ground it supported at trial with the opinion of expert witnesses. In Smith, supra, property owners challenged a planning commission's denial of a proposed resubdivision of a lot based on the planning commission's decision that " 'the lots would be out of character with the other lots in the area.' " Smith, 374 So.2d at 306. Although the lots met the specific regulation governing the minimum area requirements for lots in the subdivision, the planning commission justified its authority to deny the proposed resubdivision based on the following general provision in the regulations: " 'The size, width, depth, shape and orientation of lots and the minimum building setback lines shall be appropriate to the location of the subdivision and the type of development and use contemplated. Every lot shall contain a suitable building site.' " 374 So.2d at 307. Our supreme court held, however, that the planning commission was bound by its ordinance and that it could not "ignore the specific criteria ... and [exercise] discretion ... which is unguided by uniform standards, and capable of arbitrary application." 374 So.2d at 309.
Based on the reasoning of Smith, a historic preservation commission cannot deny a proposed change solely on the basis of its opinion that the proposed change conflicts with the general character of the historic district, which is too vague a standard. Instead, the legislature intended that a historic preservation commission can deny a proposed change to a building within a historic district based only on specific uniform standards. In the present case, the replacement windows installed by Shoal Creek did not violate the window-design standards, the only specific criteria upon which the AHPC relied to deny the COA application filed by Shoal Creek. Pursuant to Smith, supra, because the replacement windows did not violate the window-design standards, the AHPC could not deny the COA application filed by Shoal Creek based solely on its opinion that the replacement windows did not conform to the general character of the historic district.
In reviewing the actions of the AHPC, the circuit court was limited to determining whether the AHPC had a rational basis for denying the COA application or whether it acted in an arbitrary manner. See In re 67 Vestry Tenants Ass'n v. Raab, 172 Misc.2d 214, 218, 658 N.Y.S.2d 804, 807 (Sup. Ct. 1997). Based on the foregoing, we conclude that the AHPC had no rational basis for enforcing the window-design standards against Shoal Creek and that the AHPC could not deny *610 the COA application solely on the ground that the replacement windows did not conform to the general character of the historic district, a standard "capable of arbitrary application." Smith, 374 So.2d at 309. We, therefore, reverse the judgment of the circuit court and remand the case for the entry of a judgment consistent with this opinion.
APPLICATION OVERRULED; OPINION OF MAY 5, 2017, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, and Donaldson, JJ., concur.
Thompson, P.J., concurs specially.
THOMPSON, Presiding Judge, concurring specially.
The language set forth in the General Design Guidelines ("guidelines") of the City of Arab Historic Preservation Commission ("AHPC") provides that "[t]he following standards shall be applied to all rehabilitation or alteration of contributing buildings and structures in the [historic] district." General Design Guidelines, Article VII, § 2.b. One of those standards regarding the alteration of windows does not apply to the building at issue. Id. at § 2.b.8. Thus, I concur with the main opinion that, based on that language, the AHPC could not properly prohibit Shoal Creek Land & Cattle, LLC ("Shoal Creek"), from replacing the windows of its building located within the historic district ("the building") with windows that did not comply with the guidelines.
I write specially to point out that the language in Article VII, § 2.b., appears to be an aberration. In enacting the law that authorizes municipalities to require a certificate of appropriateness for changes to buildings within an historic district, the Alabama Legislature appears to have contemplated that all buildings and structures within the historic district would be subject to design guidelines, regardless of whether they were "contributing" buildings or not. See § 11-68-9(a), Ala. Code 1975 ("No change in the exterior appearance of an historic property or any building, structure, or site within an historic district may be made, and no historic property may be demolished, and no building or structure in an historic district may be erected or demolished unless and until a certificate of appropriateness for such change, erection, or demolition is approved by the historic preservation commission created by the municipality designating the historic property or the historic district." (emphasis added)).
Similarly, the City of Arab ("the city") adopted Ordinance No. 2013-1 on January 8, 2013, establishing the AHPC. The purpose of the ordinance is "to establish a uniform procedure for use in providing for the protection, enhancement, perpetuation and use of places, districts, sites, ... in accordance with the provisions of the Ordinance." § I, Ordinance No. 2013-1. The ordinance provides that a "certificate of appropriateness" is required to make "a change [to a building or structure] that will effect either the exterior architectural or environmental features of an historic property or any building, structure, site, object, landscape feature or work of art within an historic district." § II(F), Ordinance No. 2013-1.
I note that Ordinance No. 2013-1 provides that, regarding the recommendation and designation of proposed historic districts and properties, the evaluation of historic districts calls for properties within the district to be classified as either "contributing (contributing to the district)" or "noncontributing (does not contribute to the district)." § IV(B)3, Ordinance *611 No. 2013-1. Section IV also sets forth the criteria the AHPC is to consider when selecting an historic district. I believe that the city intended for the distinction between a contributing building and a noncontributing building to apply only in the initial determination as to whether a proposed historic district met the required criteria to warrant designation as an historic district.
Section V of Ordinance No. 2013-1 provides:
"After the designation by ordinance of an historic property or of an historic district, no historic property may be demolished, no building or structure in an historic district may be erected or demolished and no material change in the exterior appearance of such historic property, or of a structure, site, object, or work of art within such historic district, shall be made or be permitted to be made by the owner or occupant thereof, unless or until the application for a Certificate of Appropriateness has been submitted to and approved by the [AHPC]."
§ V(A), Ordinance No. 2013-1 (emphasis added). The plain language of the ordinance does not create an exception for the need of a COA for "noncontributing" buildings or structures. The guidelines themselves also provide that proposed projects for exterior work on "all properties" within an historic district are subject to review by the AHPC "for their appropriateness to the historic district." General Design Guidelines, Art. II.
Based on the language in the authorizing statute, the applicable city ordinance, and the guidelines themselves, I believe that the intent of the legislature and of the city was to have the guidelines apply to each building or structure within a designated historic district. However, the plain language of the section of the guidelines setting forth the standards for the replacement of windows, among other alterations, explicitly excludes the applicability of those standards from the building at issue in this case. Therefore, I reluctantly agree with the main opinion that the AHPC had no basis on which to enforce the guidelines against Shoal Creek.

The AHPC did not deny the application because it was filed after the replacement work had been completed, and the AHPC informed the circuit court that it was not contending that the denial of the application could be upheld on that ground. Therefore, we do not discuss that point.

Shoal Creek also asserted various claims for a declaratory judgment, but it abandoned those claims at the commencement of the trial.

We note that the building was not designated as a historic property. See Ala. Code 1975, § 11-68-6.