560 A.2d 50

**POTOMAC ELECTRIC POWER COMPANY, et al.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 1637, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

July 5, 1989.
Certiorari Granted Nov. 28, 1989.

Sandra Hall–Eckroade, Asst. Gen. Counsel (Bryan G. Moorhouse, Gen. Counsel, on the brief), Baltimore for appellant, PSC.

John J. Delaney (Susan M. Reutershan, Elizabeth M. Hosford and Linowes and Blocher, on the brief), Silver Spring, for appellant, PEPCO.

Paul W. Davis, Baltimore, for amicus curiae, Baltimore Gas and Elec. Co.

A. Katherine Hart, Sr. Asst. County Atty. (Clyde H. Sorrell, County Atty. for Montgomery County, on the brief), Rockville, for Montgomery County.

Argued Before GILBERT, C.J., and KARWACKI and WENNER, JJ.

GILBERT, Chief Judge.

This case asks whether local governing bodies are preempted by statute from regulating the construction of transmission lines carrying in excess of 69,000 volts. We

answer in the affirmative and, consequently, reverse the decision of the Circuit Court for Montgomery County.

The Public Service Commission (PSC), created by the General Assembly, is charged with the responsibility of regulating public utilities throughout the State. *Spintman v. C & P Tel. Co.*, 254 Md. 423, 427, 255 A.2d 304 (1969). Section 54A of article 78 provides that an electrical utility company must obtain a certificate of public convenience and necessity from the PSC before the utility may "begin the construction in Maryland of a generating station or any overhead transmission line designed to carry a voltage in excess of 69,000 volts, or exercise the right of eminent domain in construction therewith...."

The PSC, in March 1980, granted the Potomac Electric Power Company (PEPCO) a certificate of public convenience and necessity for construction of a 500 kilovolt (500,000 volts) transmission line extending from PEPCO's substation in Montgomery County to the vicinity of the Baltimore Gas and Electric Company's substation in Howard County. The PSC found: (1) it was in the public interest to construct and operate the proposed overhead transmission line, (2) a need existed for the proposed line, and (3) there was a need for the selected route from the various routes proposed.

The PSC's decision was appealed by both Howard and Montgomery County to their respective county circuit courts. The action was consolidated in the Circuit Court for Howard County, which upheld the PSC's decision granting PEPCO a certificate of public convenience and necessity. Thereafter, PEPCO filed petitions for special exceptions with the Board of Appeals for Montgomery County (Board) in connection with the construction of the transmission line.[1]

---

1. The property across which the proposed overhead transmission line would be constructed in Montgomery County is zoned Rural Cluster, which zone permits an overhead electric power transmission line in excess of 69,000 volts as a special exception use pursuant to § 59–G–2.43(f), Montgomery County Code, chapter 59 (1984). ·PEP-

The Board granted the sought exceptions but imposed certain conditions, namely:

"1. Petitioner shall be strictly bound by all oral and written testimony, evidence and exhibits in the record.

2. Petitioner shall submit a revised, detailed site plan with specifics as to the line of construction; number of poles to be constructed; size, height, color and specific locations; and the specific intervals along the line where such poles are to be placed, to the Maryland–National Capital Park and Planning Commission, with copies to this Board and to interested parties in this proceeding. Following consideration by M–NCPPC, petitioner shall file with the Board of Appeals two copies of the approved site plan.

3. Petitioner shall, prior to implementation of the special exceptions S–1413 and S–213–A, secure from the Public Services [sic] Commission a finding that construction of the line authorized, will not endanger the health and safety of persons residing in proximity to the power line. It shall be the responsibility of the petitioner to initiate whatever action is necessary to secure such finding by the PSC and to notify the Board of Appeals when such initiative has been undertaken, as well as a copy of the resulting written findings of the PSC.

4. The Board of Appeals shall, at periodic intervals of at least three (3) years, conduct review hearings to determine the appropriateness of the continued grant of the special exception. The first review hearing will be held three (3) years following written notification from the petitioner that the special exception has been implemented."

PEPCO appealed to the circuit court where the PSC was permitted to intervene as a party/appellant, and it chal-

---

CO's petition was submitted pursuant to § 59–A–4.2 and 59–G–2.43(f) of the Zoning Ordinance. These sections purport to confer jurisdiction on the Board to hear applications for special exceptions for overhead transmission lines in excess of 69,000 volts.

lenged the Board's jurisdiction to consider the matter in the light of the PSC's prior order.

The court held that the Board had jurisdiction to decide applications for special exceptions in connection with the construction of transmission lines carrying in excess of 69,000 volts. Nevertheless, the court decided that conditions 2 and 3, as quoted above, warranted reversal because they conflicted with the prior determinations of the PSC. The Board's conditions 1 and 4 were allowed by the court to stand. Both the PSC and PEPCO have sought our review.

■ The doctrine of preemption is grounded upon the General Assembly's right to reserve exclusive dominion over an entire body of the law. *Ad + Soil, Inc. v. County Comm'rs*, 307 Md. 307, 324, 513 A.2d 893 (1986). Local legislative bodies are prohibited from enacting any legislation in the preempted field. *Id.* The Court of Appeals in *City of Baltimore v. Sitnick and Firey*, 254 Md. 303, 255 A.2d 376 (1969), articulated three grounds upon which local legislation might be invalidated because of existing State legislation embracing the same subject. The grounds promulgated by the Court are: (1) the legislation conflicts with public general law, *Sitnick*, 254 Md. at 310–11, 255 A.2d 376; (2) the legislation deals with matters which are part of an entire subject on which the General Assembly has expressly reserved unto itself the right to legislate, *id.* at 311, 255 A.2d 376; and (3) the legislation deals with an area in which the General Assembly has acted with such force that an intent to occupy the entire field must be implied, *id.* at 317, 255 A.2d 376.

Nowhere, however, in Md.Ann.Code art. 78 are local governing bodies expressly forbidden to enforce zoning or planning requirements concerning the construction of transmission lines. Since local governments are not expressly forbidden from legislating in the field, the question before us becomes whether preemption by the Legislature is implied in the statute.

The focus of our inquiry is: did the General Assembly manifest a purpose to occupy exclusively the regulation of the construction of transmission lines carrying in excess of 69,000 volts? *Ad + Soil, Inc. v. County Comm'rs,* 307 Md. at 324, 513 A.2d 893. In determining if implied preemption is applicable, we inquire: (1) whether specific statutory provisions indicate a legislative intent to confine regulation of 69,000 volt transmission lines to the General Assembly, (2) whether that august body has enacted extensive and comprehensive legislation in the field, and (3) whether dual regulatory schemes could result in confusion. *See County Council v. Montgomery Ass'n,* 274 Md. 52, 64, 325 A.2d 112 (1975).

Md.Ann.Code art. 78, § 1 demarcates the PSC's jurisdiction. Section 1 provides, in pertinent part:

"The powers of the Commission shall be *liberally construed;* and the Commission shall have the powers specifically conferred by this article and by any other law, and also *all implied and incidental powers necessary and proper to carry out effectually the provisions of this article.*" (Emphasis supplied.)

Section 56 of article 78 codifies the PSC's supervisory and regulatory powers. It provides, in part:

"The Commission shall *supervise and regulate all public service companies subject to its jurisdiction to assure their operation in the interest of the public and to promote adequate, economical, and efficient delivery of utility services* in the State without unjust discrimination, giving consideration to the public safety, the economy of the State, the conservation of natural resources, and the preservation of environmental quality. To these ends, *the Commission shall enforce compliance by such companies with all the requirements of law....* The powers and duties enumerated specifically in this subtitle are not intended to limit the scope of the general powers and duties of the Commission provided for by this article." (Emphasis supplied.)

The 1968 legislative session saw the enactment of § 54A, which provides, in pertinent part:

> "*No electric company may begin the construction in Maryland of a generating station or any overhead transmission line designed to carry a voltage in excess of 69,000 volts, or exercise the right of eminent domain in connection therewith, without having first obtained from the Commission a certificate of public convenience and necessity for the construction of the station or line. Upon receipt of an application, the Commission shall notify all interested persons.... The Commission shall hold a public hearing on each application for a certificate of public convenience and necessity in the area in which any portion of the construction of a generating station or an overhead transmission line designed to carry a voltage in excess of 69,000 volts is proposed to be located, together with the local governing bodies of each such area,* unless any governing body wishes not to participate in the hearing. The Commission shall insure presentation and recommendations from interested State agencies and shall permit representatives of those agencies to sit during hearing of all parties."* (Emphasis supplied.)

The purpose of the broad grant of power to the PSC "was to place all ... public utilities under the supervision and control of the Public Service Commission...." *Gregg v. Public Service Commission,* 121 Md. 1, 30, 87 A. 1111 (1913); *Highfield Water Co. v. PSC,* 46 Md.App. 332, 348, 416 A.2d 1357 (1980). "The legislature," we said in *BG & E v. Public Service Comm'n,* 75 Md.App. 87, 99, 540 A.2d 820 (1988), "has vested the Public Service Commission with powers that are truly awesome." No Maryland case, it appears, has, since the enactment of § 54A,[2] discussed a

---

**2.** Both *Kahl v. Cons. Gas, El. Lt. & Power Co. of Baltimore,* 191 Md. 249, 60 A.2d 754 (1948), and *Deen v. Balto. Gas & Electric,* 240 Md. 317, 214 A.2d 146 (1965), discuss a local governing body's right to regulate the construction of overhead transmission lines. Those cases are inapposite because § 54A was nonexistent until 1968.

local governing body's right to regulate the construction of overhead transmission lines within the territorial limits of the local government.

Section 54A mandates that before a public utility may begin construction of this type of transmission line, "or exercise the right of eminent domain in connection therewith," it must first obtain a certificate of public convenience and necessity from the PSC. The certificate may be granted only after other state agencies evaluate and comment upon the proposal, the PSC holds a public hearing which local governing bodies may attend, and

> "only after due consideration of the recommendations of such governing bodies, the need to meet present and future demands for service, effect on system stability and reliability, economics, esthetics, historic sites, aviation safety ... and, when applicable, the effect on air and water pollution, and, the availability of means for the required timely disposal of wastes produced by any fossil fuel or nonfossil fuel generating station...."

 Local governing bodies are permitted to attend the public hearing in order to relay their concerns to the PSC regarding the appropriateness of a transmission line. The PSC must give "due consideration" to the local government's concerns. Should the PSC determine, however, that the State's interests outweigh those of the local governing bodies, it may grant the certificate of public convenience despite the latter's complaints.

Montgomery County argues that even if the PSC grants a certificate of public convenience the county can halt construction via zoning regulations. If that argument had merit, then, through the use of zoning, any local government could render the PSC's power and rulings nugatory.

Admittedly, § 54A does not expressly preclude local governments from regulating construction of transmission lines carrying in excess of 69,000 volts. Because that prohibition is not embodied within the statute, Montgomery

County reads § 54A as permitting it to regulate the construction of that particular type of transmission line.

■ In the absence of express statutory language, the primary indicium of a legislative intent to preempt a whole body of law is the comprehensiveness with which the General Assembly has legislated in the field. *Ad + Soil, Inc. v. County Comm'rs, supra.*

Under the comprehensive statutes governing the PSC's power, that administrative agency is given exclusive jurisdiction to supervise and regulate all public service companies in this State. Before authorizing the construction of high voltage overhead transmission lines, however, the PSC must, as we have noted, comply with the strict provisions of § 54A.

The comprehensiveness of § 54A, as well as the language embodied in certain other provisions of art. 78, evinces the Legislature's intent to confine the regulation of power lines solely to the PSC. Logic compels this proposition.

"If, as has been said, '[T]he power to tax is the power to destroy,'[3] then it is equally true that the power to regulate is the power to destroy because one can be 'regulated' out of business."[4]

To permit counties to regulate utilities and supersede the rulings of the PSC would be to allow chaos to reign throughout the State. It requires little imagination to foresee a hooraw's nest of utility lines running through a county from border to border and disconnected from those of an adjoining county.[5] There could exist separate, distinct

---

3. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 327, 4 L.Ed. 579 (1819).

4. Attributed to Jim Oigan. *See Bomhardt v. State,* 71 Md.App. 609, 526 A.2d 983 (1987).

5. We observe that the following jurisdictions endeavor, through their zoning ordinances, to regulate the location, construction, and operation of overhead transmission lines, related electrical power facilities, and utility structures: City of Baltimore and the Counties of Allegany,

and completely disconnected power transmission lines in each of the twenty-three counties and Baltimore City, a bureaucratic nightmare never intended by the Legislature.

Without uniform State regulations, transmission line construction would in all likelihood cease because power companies would not be able to comply with the conflicting requirements of the various local governments.[6] Recognizing the confusion that would result if local governments regulated transmission line construction by the use of zoning laws, the New Jersey Superior Court declared:

> "The proper regulation of public utilities and the enforcement of the obligations of proper service are obviously matters of more than local concern. A utility rarely confines its sphere of operation to the boundary lines of one political subdivision. The performance of its obligations to the public and the power of the board [of public utility commissioners] to compel such performance in the interest of the general public good cannot be thwarted by contrary action of one municipality, which might well be inclined to view a situation only from the standpoint of its own citizens."

*Application of Hackensack Water Co.*, 41 N.J.Super. 408, 125 A.2d 281, 288 (1956); *N.Y. Central R.R. v. Ridgefield,* 84 N.J.Super. 85, 201 A.2d 67, 72 (1964); *New York State Electric & Gas Corp. v. McCabe*, 32 Misc.2d 898, 224

---

Anne Arundel, Baltimore, Calvert, Caroline, Carroll, Cecil, Charles, Dorchester, Frederick, Garrett, Harford, Howard, Kent, Montgomery, Prince George's, Queen Anne's, St. Mary's, Somerset, Talbot, Washington, Wicomico, and Worcester. Additionally, Allegany, Carroll, Cecil, Garrett, and Washington Counties permit utility facilities in all zones without the requirement of a special exception or conditional use permit. The other counties and the City of Baltimore require special exception or conditional use approval in at least some zones. Moreover, Baltimore City, Anne Arundel, Baltimore, Charles, Harford, Howard, Montgomery, Queen Anne's, St. Mary's, and Wicomico Counties also prohibit utility facilities in certain zones.

**6.** In the instant case, the Brighton–High Ridge line will extend through Montgomery and Howard Counties.

N.Y.S.2d 527, 532 (1961); 8 E. McQuillin, *Municipal Corporations* § 25.15 at 41 (1983).

Similarly, the Pennsylvania Supreme Court observed that "[i]f each county were to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state." *County of Chester v. Philadelphia Electric,* 420 Pa. 422, 218 A.2d 331, 333 (1966). *See also Commonwealth v. Delaware & Hudson Railway Co.,* 19 Pa.Cmwlth. 59, 339 A.2d 155, 157 (1975). The Pennsylvania Supreme Court also remarked in *Duquesne Light Co. v. Upper St. Clair Tp.,* 377 Pa. 323, 105 A.2d 287, 293 (1954), with respect to local control of power lines:

"Local authorities not only are ill-equipped to comprehend the needs of the public beyond their jurisdiction, but, and equally important, those authorities, if they had the power to regulate, necessarily would exercise that power with an eye toward the local situation and not with the best interests of the public at large as the point of reference."

■ In the case *sub judice,* Montgomery County, through its Board of Appeals, is attempting to use its zoning powers to impose conditions other than those made by the PSC in its order granting PEPCO a certificate of public convenience. To permit the Board to do so would labefy the PSC.

The Board understandably looks at the problem on an intra-county basis, but the PSC must view the construction of the power line from an inter-county perspective and possibly even from an inter-state one.[7]

---

**7.** Recognizing the confusion that would result if local zoning boards were permitted to regulate the construction of overhead transmission lines, other states have expressly prohibited zoning restrictions. *See* Ohio R.C. § 519.21, 4906.03; Pennsylvania, the Municipalities Planning Code, 53 P.S. § 10619, 66 P.S. § 1101; R.S. 40:55-50, N.J.S.A.; N.J.S.A. 40:55D-19.

Once the PSC has by order authorized the erection of power lines along a designated route, little more remains for a local government to do except perform the ministerial duty of issuing the necessary building permits.

The Montgomery County Board of Appeals improperly and illegally imposed conditions upon the issuance of the building permit of PEPCO. The circuit court erred in recognizing the Board's jurisdiction over PEPCO in the instant case and in not reversing all of the conditions the Board imposed.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.