933 A.2d 872

John EVANS, et al.

v.

Thomas BURRUSS, et al.

No. 1 Sept. Term, 2007.

Court of Appeals of Maryland.

Oct. 12, 2007.

Reconsideration Denied Nov. 6, 2007.

Steven VanGrack (VanGrack, Axelson, Williamowsky, Bender & Fishman, P.C.; Paul J. Benkert, Jr., on brief), Rockville, for Petitioners.

James L. Parsons, Jr. (Lynott, Lynott & Parsons, P.A., on brief), Rockville, for Respondents.

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, and ALAN M. WILNER, (retired, specially assigned) and DALE R. CATHELL, (retired, specially assigned), JJ.

DALE R. CATHELL, Judge (retired, specially assigned).

John Evans, petitioner,[1] appeals to this Court from a judgment rendered by the Court of Special Appeals. In his petition for certiorari and in his brief he presented a single issue for our review:

> "Whether a neighboring property owner has a due process right to actual notice of the issuance of a building permit."

---

1. As we note, *infra*, Montgomery County, Maryland, filed a motion to participate as *amicus curiae*, which we granted on May 21, 2007.

Thomas Burruss, et al.,[2] respondents, filed no cross-petition. We shall resolve only the question raised in the petition.[3]

## I. Facts

On February 20, 2004, petitioner received a building permit[4] from Montgomery County to erect four amateur radio (ham radio) towers, each 190 feet in height, on his property in Poolesville, Maryland. On June 23, 2004, he received a revised building permit. Approximately five weeks later, on August 5, 2004, construction commenced. Upon seeing construction trucks (cement trucks pouring concrete), work being done, and holes being drilled on petitioner's property, respon-

---

2. Thomas Burruss and his wife, Judith Burruss, and Alan Gaunoux, collectively will be referred to as respondents or Burruss.

3. Respondents, although having filed no petition of their own, in their brief advance two additional issues:
 "1. Whether the Board of Appeals erred as a matter of law by refusing to allow Respondents an opportunity to make a factual showing of substantial deprivation of their property interests based upon the issuance of the building permits.
 "2. Whether the thirty day 'time for appeal' requirement is applicable to the facts of this case."
 In a footnote in respondents' brief, Burruss acknowledges that his second issue was not addressed in petitioner's brief, but asserts that it was discussed in the petition for certiorari. In the petition, its mention was conditioned on a finding adverse to petitioner on the question directly presented in the petition. In light of our decision, the thirty-day issue will not be addressed.
 We decline to separately address respondents' first question above. As indicated, respondents did not file a cross-petition. The issues before this Court, generally, are limited to the questions presented in petitions, not other, or additional, questions that later appear in briefs. Accordingly, except to the extent that respondents' first question might be indirectly discussed in our treatment of the question in the petition, it too will not be addressed.

4. That general building permit, like most such permits for projects that meet general zoning and building code requirements, is not required to be subject to a public hearing process, although the file and all matters relating to it are public records and available to members of the public, including these respondents, for examination. That permit, as with the ten thousand or more building permits, or other types of permits, issued in Montgomery County annually, was issued in the usual course of business.

dents, the abutting property owners, checked with the county authorities and then became aware, for the first time, of the permits that had been issued for the construction of the towers. On August 13, 2004, respondents requested the Montgomery County Department of Permitting Services (DPS) to issue a stop work order.[5] DPS refused respondents' request.

On August 30, 2004, respondents noted two appeals to the Board of Appeals of Montgomery County in respect to the issuance of the building permits (and sediment control permit issued),[6] claiming that they had been unlawfully issued. Petitioner and Montgomery County (which intervened in the cases before the Board of Appeals), moved to dismiss the appeals. The motions were granted by the Board. It based one dismissal on untimeliness, and the other because there was no basis to appeal the issuance of a sediment control permit, and because it (the Board) had no authority to hear the appeal.

Respondents then filed a petition for judicial review with the Circuit Court for Montgomery County. Again, the petitioner and Montgomery County moved to dismiss the petition for judicial review. The Circuit Court upheld the Board's finding that the appeal of the original issuance of the building permit was untimely, but found that the subsequent issuance of the sediment control permit had the effect of renewing the building permit, making the appeal timely. On that basis, the Circuit Court remanded the case to the Board for it to entertain the appeal of the building permit. At that point, petitioner filed a notice of appeal of the Circuit Court judgment to the Court of Special Appeals. That Court, in an unreported opinion, issued October 14, 2006, reversed the

---

5. A stop work order was subsequently issued by DPS in respect to a possible minor sediment control issue.

6. DPS had initially determined that the project did not meet the threshold for requiring a sediment control permit. Later when its determination came into question, petitioner, although it is not clear that he was required to do so, nonetheless applied for and received a sediment control permit.

findings of the Circuit Court that the issuance of the sediment control permit had renewed the issuance of the building permit and that the appeal of the building permit, therefore, had been timely. In other words, the Court reinstated the Board's decision that the appeal of the building permit had been untimely. The Court of Special Appeals, however, remanded the case to the Board of Appeals for it to determine whether respondents had a general[7] due process right to actual personal notice of the issuance of the building permit and/or a property right that was adversely affected by the issuance of the permit. We granted certiorari. *Evans v. Burruss*, 398 Md. 313, 920 A.2d 1058 (2007).[8]

## II. Standard of Review

Our review of the agency's decision entails only an appraisal and evaluation of the agency's fact-finding and not an independent decision on the evidence. *Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 569, 709 A.2d 749, 753 (1998); *Anderson v. Dep't of Public Safety & Correctional Services*, 330 Md. 187, 212, 623 A.2d 198, 210 (1993). When the agency is acting in a fact-finding or quasi-judicial capacity, we review its decision to determine "whether the contested decision was rendered in an illegal, arbitrary, capricious, oppressive or fraudulent manner." *Dep't of Natural Resources v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 224, 334 A.2d 514, 523 (1975); *see Goodwich v. Nolan*, 343 Md. 130, 148, 680 A.2d 1040, 1049 (1996); *Weiner v. Maryland Ins. Admin.*, 337 Md. 181, 190, 652 A.2d 125, 129 (1995).

"[A] reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the

---

7. General, as used here, means as opposed to a specific provision in the Montgomery County statutes requiring actual personal notice to neighbors of the issuance of building permits for specific properties. The parties have not informed the Court of any such requirement in respect to the general, normal issuance of building permits in Montgomery County. We know of none.

8. Montgomery County, Maryland filed a motion to participate as amicus curiae, which we granted on May 21, 2007.

final decisions of an administrative agency...." *Baltimore Lutheran High School Ass'n, Inc. v. Employment Security Admin.*, 302 Md. 649, 662, 490 A.2d 701, 708 (1985); *see State Highway Admin. v. David A. Bramble, Inc.*, 351 Md. 226, 238, 717 A.2d 943, 949 (1998); *Anderson*, 330 Md. at 212, 623 A.2d at 210; *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). In this context, " '[s]ubstantial evidence,' as the test for reviewing factual findings of administrative agencies, has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]' " *Bulluck*, 283 Md. at 512, 390 A.2d at 1123 (quoting *Snowden v. Mayor & City Council of Baltimore*, 224 Md. 443, 448, 168 A.2d 390, 392 (1961)); *see Catonsville Nursing Home*, 349 Md. at 569, 709 A.2d at 753; *Caucus Distributors, Inc. v. Maryland Securities Comm'r*, 320 Md. 313, 323–24, 577 A.2d 783, 788 (1990). We have stated that, " '[a] court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' " *Bucktail, LLC v. County Council of Talbot County*, 352 Md. 530, 552–53, 723 A.2d 440, 450 (1999) (quoting *United Parcel Service, Inc. v. People's Counsel*, 336 Md. 569, 576–77, 650 A.2d 226, 230 (1994)). "A reviewing court is under no constraints in reversing an administrative decision that is premised solely upon an erroneous conclusion of law." *Prince George's County v. Brown*, 334 Md. 650, 658, 640 A.2d 1142, 1146 (1994); *see Catonsville Nursing Home*, 349 Md. at 569, 709 A.2d at 753 (quoting *Insurance Comm'r v. Engelman*, 345 Md. 402, 411, 692 A.2d 474, 479 (1997)); *People's Counsel v. Maryland Marine Mfg. Co.*, 316 Md. 491, 497, 560 A.2d 32, 34–35 (1989).

■ "We are also obligated to 'review the agency's decision in the light most favorable to the agency,' since their decisions are *prima facie* correct and carry with them the presumption of validity." *Catonsville Nursing Home*, 349 Md. at 569, 709 A.2d at 753 (quoting *Anderson*, 330 Md. at 213, 623 A.2d at 211; *Bulluck*, 283 Md. at 513, 390 A.2d at 1124). We have

noted that our review of an administrative agency's decision differs markedly from our review of the decision of a trial court in other types of civil cases:

"In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency."

*United Steelworkers of America AFL–CIO, Local 2610 v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62, 69 (1984).

## III. Discussion

### A. Are Property Interests Generally Created by Zoning Ordinances?

The Supreme Court of the United States, when discussing the Fourteenth Amendment's procedural protection of property, has stated that:

"Certain attributes of 'property' interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than an unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that sup-*

*port claims of entitlement to those benefits."* (Emphasis added.)

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In *Cleveland Board of Education v. Loudermill,* the Supreme Court reaffirmed *Roth,* saying:

"Respondents' federal constitutional claim depends on their having a property right in continued employment. If they did, the State could not deprive them of this property without due process.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .' *The Ohio statute plainly creates such an interest.* Respondents were 'classified civil service employees,' entitled to retain their positions 'during good behavior and efficient service,' who could not be dismissed 'except . . . for . . . misfeasance, malfeasance, or nonfeasance in office'. . . . The statute plainly supports the conclusion, reached by both lower courts, that respondents possessed property rights in continued employment." (Citations omitted.) (Emphasis added.) (Footnotes omitted.)

*Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

Unlike the Ohio statute referred to by the *Loudermill* Court, there is no ordinance or other statute that has been brought to our attention, or that we have found, that "plainly" creates any right for the respondents to participate in the purely "ministerial" process leading to the issuance of a building permit where the application and the permit are in accordance with the law.

Montgomery County Code ("MCC") (2003),[9] § 8–25, provides that where the application complies with all the requirements of the building and zoning provisions, the Director

---

**9.** This portion of the MCC has remained unchanged from 2003 to the present.

*"must"* issue a permit as soon as practicable. Section 8–25 provides in relevant part:

"(a) Action on application. The Director must examine or cause to be examined each application for a building permit or an amendment to a permit within a reasonable time after the application is filed. If the application or the plans do not conform to all requirements of this Chapter, the Director must reject the application in writing and specify the reasons for rejecting it. If the proposed work conforms to all requirements of the Chapter and all other applicable laws and regulations, the Director *must issue a permit for the work as soon as practicable.*" (Emphasis added.)

Sub-section (g) further provides:

"The building permit or a true copy thereof and a copy of the building or other plans covered by the permit shall be kept on the site of operations open to inspection by the department, fire or police officials in the course of their duties, during the entire time the work is in progress and until its completion."

■ We have been directed to no further express requirement in the MCC, under the circumstances here present,[10] placed on the permit holder or the Director or any other official to notify abutting or neighboring property owners of the issuance of a building permit. We have found none. Accordingly, the MCC itself creates no right of notice nor does it create any additional property rights in adjacent property owners that they do not have inherently.[11]

---

**10.** There is a provision in the MCC requiring a more conspicuous notice for new construction on vacant, residentially or agriculturally zoned land that would affect the footprint or height of any existing structure. The Board found that provision did not apply in the circumstances of this case. That issue has not been preserved for this Court because of the limited nature of the issue raised in the certiorari petition and the absence of a cross-petition. That issue is not before us and we do not decide it.

**11.** We do not address whether the County could create such property rights.

In *Feldman v. Star Homes, Inc.,*[12] neighbors contended that, as neighboring property owners, they had a constitutional right to public hearings in respect to an approval of a subdivision plan, even though the local statutes did not require public hearings. The Court held:

"[W]e find nothing in the sections dealing with subdivision plans that requires notice or a public hearing. Indeed, under Section 118, it is provided that the mere failure of the Commission to act upon a plan submitted to it shall be equivalent to approval.... In the absence of ... restrictions duly imposed by the zoning authorities, it is still true that a property owner has the right to use his property as he sees fit, so long as the use does not constitute a nuisance.

"The appellants contend, however, that they have a constitutional right to a hearing before a street layout is approved by the Commission.... In the instant case it does not appear that property rights of the appellants were affected by the Commission's approval."

*Feldman,* 199 Md. 1, 6, 84 A.2d 903, 905 (1951). Referring to *Feldman,* this Court in *Clarke v. County Commissioners for Carroll County,* stated:

"This leaves for our remaining consideration only appellants' argument that they were denied a hearing prior to approval of the [subdivision] plan.... [N]either Art. 66B nor the subdivision regulations require that a public hearing be conducted by the commission before acting on subdivision plans. *Nor does this argument rise to a constitutional level* .... (Emphasis added.)

270 Md. 343, 350, 311 A.2d 417, 421 (1973). Neither *Feldman* nor *Clarke* has been overruled and they remain the law in this State. Indeed, this point of law in *Feldman* has been recognized as the "contrary view" to that of another jurisdiction. In *Horn v. County of Ventura,* the California Court opined on

---

12. *Feldman* was an action for declaratory judgment, not a petition for judicial review. Nonetheless, its language remains relevant in the constitutional context.

the position then extant in that State in respect to notices and hearings of applications for subdivisions of land:

> "[The] party urges that plaintiff [adjacent property owner] suffered no significant deprivation of property which would invoke constitutional rights to notice and hearing. However ... land use decisions which 'substantially affect' the property rights of owners of adjacent parcels may constitute 'deprivations' of property within the context of procedural due process.... (For a contrary view, *see Feldman v. Star Homes* (1951) 199 Md. 1, 84 A.2d 903 and *Hancock v. City of Concord* (1974) 114 N.H. 404, 322 A.2d 605.)"

24 Cal.3d 605, 156 Cal.Rptr. 718, 596 P.2d 1134 (1979).

In *Hancock*,[13] statutory provisions [14] provided that abutting property owners were entitled to participate in hearings in respect to applications for subdivision approval. The issue involved whether non-abutting, but nearby, property owners [15] were entitled to be heard at the hearings in respect to applications for subdivision approval. The Court identified the issue as: "[W]hether nonabutters have a right to be heard at a hearing before the Concord Planning Board concerning an application for subdivision under RSA [Revised Statutes Annotated] 36:23. *Hancock v. City of Concord*, 114 N.H. 404[, 322 A.2d 605] (1974)." That Court opined:

---

13. In a later case, *Weeks Restaurant Corp. v. City of Dover*, 119 N.H. 541, 404 A.2d 294 (1979), the New Hampshire Court overruled the *Hancock* decision on an aggrieved party issue based on the zoning and planning nature of that case. The present case, as it appears before us, does not involve planning and zoning. It is a building permit case.

14. We have not been directed to any statutory provisions in the instant case applicable in Montgomery County that specifically provide for notice to adjacent or neighboring property owners, or that provide for hearing, prior to the issuance of a building permit that is permitted as of right. We know of none.

15. The statute there involved required notices of hearings to be sent to owners of abutting property. There were no provisions requiring notice to other nearby property owners.

"Mr. Sylvia sought to subdivide his land into separate parcels for the purpose of erecting garden apartments, a permitted use in the R–3 district. Notice of a May 1, 1972 hearing ... was sent to abutters of the Sylvia property as required by RSA 36:23.

"Plaintiffs, as nonabutters were not entitled to notice under RSA 36:23 and were not notified of the hearing by the planning board, but learned of the hearing and were in attendance.... They alleged before the superior court that their properties would be affected ... and that they [had] intended to speak at the hearing, but were not given that opportunity. Plaintiffs argue that the decision of the board without giving them an opportunity to speak at the hearing amounted to a deprivation of their property rights without due process of law."

*Hancock*, 114 N.H. at 404–06, 322 A.2d at 605–06. The New Hampshire Court went on to hold that:

"We do not agree that failure to allow plaintiffs an opportunity to speak at a hearing pursuant to RSA 36:23 amounts to an unconstitutional deprivation of their property rights under the due process clause. While the legislature could have provided for a public hearing ... as it has in several other sections ... failure to so provide is in no way violative of the due process clause nor inconsistent with the basic principles of representative government."

*Hancock*, 114 N.H. at 407, 322 A.2d at 607. *See Carter v. City of Nashua*, 116 N.H. 466, 362 A.2d 191 (1976).

*Laclede Gas Co. v. Abrahamson*, 296 S.W.2d 100 (Mo.1956), was a condemnation case where the plaintiffs were seeking to intervene in an action in which property belonging to another property owner was being taken. Citing Feldman and other cases, the Court opined:

" ' "Interest," generally, means a concern which is more than mere curiosity, or academic or sentimental desire. One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will

be directly enlarged or diminished by the judgment or decree in such action.'

. . .

"The Court held that no right to intervene was shown because the intervenor showed 'no direct interest in the litigation but only a consequential interest in the probable use of the property if plaintiff is successful, and no possibility of gain or loss from the direct legal effect of any judgment that might be rendered.' "

*Laclede Gas Co.*, 296 S.W.2d at 102–103.

Returning to our own State, we recently discussed a similar issue. In a case involving the Public Service Commission, where there was a statutory provision requiring advertisement of a public hearing, but no other notice requirement, neighboring property owners asserted that they were entitled to actual personal notice of the hearing. The question posed, as relevant to the instant case, in *Sprenger v. Public Service Commission of Maryland,* 400 Md. 1, 5, 926 A.2d 238, 240 (2007),[16] was: "Is an interested person . . . entitled to bring an action for declaratory relief if the Public Service Commission fails to provide [actual personal] notice [to the 'interested person'] and the time to file an appeal . . . has expired?" After noting that the only express requirement for a general notice of the hearing through newspaper publication had been met, we addressed the contention that Sprenger was entitled to actual personal notice of the hearing.

"There is no requirement in [the statutes] that personal service of notice be given to interested persons. Those sections only require that notice be given to interested persons. If we were to agree with petitioners that these sections required personal service of notice, we would be, at best, forcing an interpretation that limits the manner in which notice may be given. . . .

. . .

---

16. The proposed project was 10.8 linear miles of wind turbines to be erected at high elevations in Western Maryland. It was a facility designed to generate energy from wind.

"[U]nder petitioner's theory, all interested persons should receive personal service of notice. Petitioners, without substantive explanation, define interested persons as those owning property contiguous to the Facility and those within half a mile of the project.... [H]ow then would the Commission determine who are interested persons? In the circumstances of this case should individuals whose sight lines are affected by the towers be included? They could be five miles or more away located in the mountainous terrain where the Facility is sited.... And what about those thousands who might claim to be, or to pass, within earshot of the spinning blades? Would all of such persons or groups, and many others, be entitled to 'personal' individualized service of notice?

"The extent of the pool of interested persons could never be determined.... The agency could never be sure it had served notice, by certified mail or otherwise, on all interested parties."

*Sprenger*, 400 Md. at 30–32, 926 A.2d at 255–56.

This case also involves high towers, albeit less than half as tall as the towers in *Sprenger*. We have found no evidence in the record we have reviewed that indicates that the fall pattern [17] of the towers was an issue. As far as can readily be discerned, the issue revolves around the towers being in the line of sight of respondents.[18] While the area from which the "pool of interested persons" might come may well be less in the present case than the potentially impacted area in *Sprenger*, depending on demographics, the "pool of interested persons" might well be larger. If individualized personal notice were to be required, how could the agency ever verify that it had given such notice to all "interested persons?" How could it do so in the over 10,000 instances of ministerial building permit issuances each year in that county and the numerous

---

**17.** Fall pattern relates to the direction, and where, the towers would fall—if they fell.

**18.** It might be described by some as visual pollution.

other types of permits issued in Montgomery County? In cases such as this, where the underlying issue involves sight lines, hundreds, if not thousands, of individualized personal notices might be required.

This is not a case where municipal authorities have the right to exercise initial discretion. It is not a request for a variance. It is not a request for piecemeal rezoning. According to the record, at the time of the original issuance of the permit, petitioner's project complied with the provisions of the land use codes and building codes.[19] As such, the issuance of the building permit was a purely ministerial act.

---

**19.** There was an issue, before the Board, as to whether the towers complied with the zoning code at the time of original issuance. On judicial review, the trial court agreed that it did. The Court of Special Appeals did not reverse that finding. As we have indicated, respondents filed no cross-petition and petitioner did not raise that issue in his petition. Accordingly the correctness of that ruling is not before us.

The issue of whether the project was controlled by the amendment ultimately made to the zoning code resulting from respondents' complaints to county officials, or by the Code as it existed at the time of the issuance of the building permits, was litigated below.

While the issue of "vested rights" is not properly before us, and accordingly, we do not resolve that issue, we do note, as we indicated above, that the construction of the towers commenced on August 5, 2004. That construction was observed and then verified by respondents no later than August 13, 2004. The amendment to the ordinance, which respondents argued below should have been binding on petitioner, was not enacted until December 26, 2005, over 15 months after the construction had begun and respondents were aware of it. The date on which "vesting" (construction should be so advanced that the nature of the construction could be observed by persons passing by) under Maryland jurisprudence, would be determined, would be the date when the amendment was enacted, in this case December 26, 2005.

Judge Moylan, for the Court of Special Appeals in *Town of Sykesville v. West Shore Communications, Inc.*, 110 Md.App. 300, 677 A.2d 102 (1996), reiterated the standards gleaned from our cases for "vesting" in Maryland:

"For a right to proceed with construction under existing zoning to vest, three conditions must be satisfied: 1) there must be the actual physical commencement of some significant and visible construction; 2) the commencement must be undertaken in good faith, to wit, with the intention to continue with the construction and to carry it through completion; and 3) the commencement of construction must be pursuant to a validly issued building permit."

### B. The Issuance of Building Permits, Generally, is a Ministerial Act

We recently stated in *City of Bowie v. Prince George's County*, that:

"The City's third and final issue challenges the sufficiency of the notice given of the filing of the application for final plat approval and the Planning Board's hearing thereon. The City asserts that it was denied due process rights by the Board's failure to provide it notice that Green Hotels had filed for final plat approval and that the Board had scheduled the matter for hearing. The parties argue at length whether the Board's action . . . should be deemed ministerial, and thus relieved of any externally-imposed formal notice requirement or should be labeled discretionary, therefore making it incumbent upon the Board to provide actual notice to the City. . . .

---

110 Md.App. at 305, 677 A.2d at 104 (quoting *Prince George's County v. Sunrise Development Ltd. P'ship*, 330 Md. 297, 314, 623 A.2d 1296, 1304 (1993)). In respect to the first condition, that Court stated:
" 'If the public could have seen that construction had started before the zoning change, the public can appreciate that the new law is not being violated.' . . .

. . .

"By contrast with . . . Sunrise, the construction completed in this case . . . was no mere 'token' construction but was extensive. It was, moreover, readily apparent and visible [on the date the ordinance was changed] to any interested neighbors or other observers. . . .
" 'By the time the ordinance was adopted the site had been graded; an excavation for the tower base had been dug; and two layers of rebar steel had been installed. . . .'
" 'In the context in which the work was being performed, the work clearly indicated that a tower was being erected.' " (Emphasis added.)
*Sykesville*, 110 Md.App. at 320–21, 677 A.2d. at 111–12.
It seems highly unlikely, given the fact that respondents had observed construction which flagged its nature fifteen or more months earlier, that petitioner had not progressed with construction to the point that the nature of what was being built would be readily observable to passersby on December 26, 2005—especially given that the towers were destined to be 190 feet tall.
There being no cross-petition, however, it is not necessary, as we indicated, to resolve the issue of "vesting."

'It is elementary that governmental bodies, tribunals, agencies ... and officials ... exercise functions that are divided into three general categories: executive [i.e., ministerial], judicial, and legislative.... And functions, when they are not purely and completely judicial or legislative in nature, but have qualities or incidents resembling them, are referred to as quasi-judicial or quasi-legislative [i.e., discretionary].'

"Ministerial acts are objective in nature and include, for example, the issuance of a building permit, predicated upon presentation of final plat approval, as in the case *sub judice*....

"The City also argues that it was entitled not just to notice but to 'meaningful' notice of the Board's acceptance ... of Green Hotels' final plat. Green Hotels contends that the Subdivision Regulations ... are purposely silent as to any procedure requiring notice or public hearing at the final plat stage....

. . .

"[We hold that] as the Board's act of approving or rejecting the final plat is a ministerial function, we find no merit in the City's contention that it was denied due process by the Board's failure to provide it specific and individualized notice of the Board's receipt and scheduling of Green Hotels' application for final plat approval."

*Bowie,* 384 Md. 413, 439–43, 863 A.2d 976, 991–93 (2004) (quoting *Hyson v. Montgomery County Council,* 242 Md. 55, 62, 217 A.2d 578, 582–83 (1966)). *See Martin v. Bucklin,* 214 Md. 140, 142–43, 133 A.2d 426, 426–27 (1957) (recognizing the ministerial nature of the application and issuance process in respect to building permits in denying mandamus). In *Potomac Electric Power Company v. Montgomery County,* 80 Md.App. 107, 118, 560 A.2d 50, 56 (1989), where, albeit perhaps as dicta, Chief Judge Gilbert, for the intermediate appellate court, opined: "Once the PSC has by order authorized the erection of power lines along a designated route, little more

remains for local government to do except perform the ministerial duty of issuing the necessary building permits." [20]

---

**20.** Many other jurisdictions also generally consider the approval and issuance of building permits, or similar acts of approval by governmental officials, as ministerial in nature. *See Ridgeview Partners, LLC v. Entwistle,* 354 F.Supp.2d 395, 400 (S.D.N.Y.2005) (Where the court defined ministerial acts, such as the issuance of a building permit, as an act without discretion to grant or deny, and not subject to review.); *Wal–Mart Stores, Inc. v. County of Clark,* 125 F.Supp.2d 420, 427 (D.Nev.1999) ("Further, the issuance of a building permit is a purely ministerial act in this case."); *Prentiss v. City of South Pasadena,* 15 Cal.App.4th 85, 18 Cal.Rptr.2d 641, 645 (1993) (" '[T]he following actions shall be presumed ministerial: [] (1) Issuance of building permits.' ") (quoting Cal. Admin. Code, tit. 14 § 15268); *G.B.V. International, Ltd. v. Broward County,* 709 So.2d 155, 156 (Fla.App.1998) ("[T]he developer had complied with all of these requirements, so that approval was a ministerial function.")(overturned on other grounds at *Broward County v. G.B.V. International Ltd.,* 787 So.2d 838 (2001)); *Citizens Against Reckless Development v. Zoning Bd. of the City and County of Honolulu,* 114 Hawai'i 184, 200, 159 P.3d 143, 145 (2007); *Clegg v. Zoning Board of Appeals of the City and County of Honolulu,* 73 Haw. 1, 7, 826 P.2d 876, 879 (1992) ("[W]e characterized the function of the Building Department in its issuance of a building permit as 'purely ministerial.' "); *U.S. Home & Development Corp. v. LaMura,* 89 N.J.Super. 254, 259, 214 A.2d 538, 541 (1965); *67 Vestry Tenants Ass'n v. Raab,* 658 N.Y.S.2d 804, 809, 172 Misc.2d 214, 219–20 (1997) (Ministerial acts such as building permits are exempted from statutory provision allowing review.); *Charter Land Development Corp. v. Hartmann,* 566 N.Y.S.2d 375, 376, 170 A.D.2d 600, 601 (1991) ("Once a variance had been granted, the respondent was not bestowed with any discretion, but was obligated to issue the building permits as a ministerial act. . . ."); *Parks v. Bd. of County Comm'rs of Tillamook County,* 11 Or.App. 177, 203, 501 P.2d 85, 98 (1972) (" 'The issuing of permits has often been held to be an administrative or ministerial act . . . .' ") (quoting 2 Rathkopf, *The Law of Zoning and Planning* 55–3, 55–4 (3d ed. 1966)); *McNaughton Co. v. Witmer,* 149 Pa.Commw. 307, 613 A.2d 104 (1992); *Walrath v. Fisher,* 20 Chest. 50, 54 Pa. D. & C.2d 709, 711–12 (1971) (holding that mandamus lies to direct an official to perform his ministerial duty of issuing a building permit); *Rhodes v. Shapiro,* 494 S.W.2d 248, 250 (Tex.Civ.App.1973) ("Where . . . the applicant complies with all existing requirements, the issuance of a building permit . . . becomes a mere ministerial duty."); *Home Builders Ass'n of Kitsap County v. City of Bainbridge Island,* 137 Wash.App. 338, 341, 153 P.3d 231, 233 (2007) (Where the determination of where in the budget to account for fees the Court stated: "All fees and costs associated with processing ministerial building permits are accounted for in the Building Subfund.").

In *Asche v. Bloomquist,* where a nuisance action was attempting to be maintained in the face of claims that appellant had to exhaust adminis-

 Accordingly, we hold that the issuance of building permits in respect to applications that fully comply with applicable ordinances and regulations of a particular subdivision is a ministerial act. No notices beyond that provided for in the applicable laws of the particular jurisdiction are normally required. The failure to give notice when none is required by constitution or statute, is not, normally, a denial of due process,[21] nor is it the deprivation of any of the bundle of rights incident to the ownership of private property.

## C. Adjoining Owners' Property Rights in the Permitting Process

We shall now examine what property rights, if any at all, an abutting or neighboring property owner (or owners) may have in respect to the uses of nearby property when such uses are permitted by zoning or other governmental regulation. In that examination we are especially cognizant of the police power aspect, i.e., its limitations, of the zoning laws. We have not been directed to any of our cases, nor have we discovered any, in which this Court has held that the issuance of a

---

trative remedies in respect to her attempt to oppose the building of a house that would obstruct her view of Mt. Rainier, the Court, in addressing a specific statutory provision, held:

"Here, the first element ... is met. They lost their view of Mt. Rainier when the Bloomquists began building their house under the permit's authority. The last element is also met. The KCC [Kitsap County Code] provisions do not specify an appeal process for building permits. The closest analogous code provisions indicate that an applicant can appeal ministerial decisions, but it does not provide for appeals by neighbors. Accordingly, there was no administrative process for the Asches to exhaust." (Citations omitted.)

*Asche,* 132 Wash.App. 784, 792, 133 P.3d 475, 479 (2006). *See Lincoln Shiloh Associates, Ltd. v. Mukilteo Water District,* 45 Wash.App. 123, 128, 724 P.2d 1083, 1086 (1986) ("[P]rocessing a building permit is a ministerial act...."); *Pentagram Corp. v. City of Seattle,* 28 Wash.App. 219, 227, 622 P.2d 892, 896 (1981) ("The issuance of building permits ... generally is considered ministerial in the sense that the applicant is entitled to a permit once it complies with the applicable laws and ordinances.").

**21.** Due process concerns may exist when notices are required to be given by constitution or statute and it is alleged that they have not been made.

building permit for one property, creates or interferes with property rights of owners of adjoining properties.

Several of our cases, including *England v. Mayor and Council of Rockville*, 230 Md. 43, 185 A.2d 378 (1962), which involved a zoning reclassification, indirectly indicate exactly the opposite. *England* briefly discussed, somewhat obliquely, neighboring property rights in the police power context. After the trial court had basically found that England, the property owner applying for a reclassification, was entitled to it, the lower court had, nonetheless, upheld the denial of the reclassification based upon neighboring owners' concerns. There, we said:

> "We think appellants proved their case. The Chancellor stated in his opinion that 'from a view of the property it is apparent that eventually all of the land in the vicinity, and including the subject property, should be zoned for industrial and/or commercial purposes.' . . . He stated that the proposed change 'would be of no benefit' to surrounding property owners. We think the chancellor misapplied the applicable principles of law to the facts of this case. . . .

> "There was clear evidence of original mistake or change of condition. . . . Under the circumstances, *benefit to the neighboring residents is not a proper test.* Restrictions imposed under the police power must be related to the general welfare and cannot be supported on the basis of benefit to surrounding property." (Emphasis added.)

*England*, 230 Md. at 46, 185 A.2d at 380. Similarly, in the earlier reclassification case, *Hoffman v. Mayor and City Council of Baltimore*, we stated:

> "If a residential neighborhood desires protection by a border of unused property, necessarily it must provide its own property, not appropriate its neighbors' for this purpose. 'In order to impose restrictions some valid exercise of the police power must be proven. But such power is invoked for the protection of the property restricted and not to give protection to surrounding property.' "

*Hoffman,* 197 Md. 294, 301, 79 A.2d 367, 370 (1950) (quoting *Chayt v. Maryland Jockey Club,* 179 Md. 390, 395, 18 A.2d 856, 858 (1941)).

*Chayt v. Maryland Jockey Club, supra,* involved Pimlico Race Track and a change to the original zoning for the particular area. Part of the race track property involved had been grand-fathered as a non-conforming use and had been used mainly for parking. Maryland Jockey Club applied for permits to construct stables on the site. Neighboring residential property owners sought and received an injunction restraining the Jockey Club from constructing the stables near their residential property. Thereafter, the zoning ordinance was amended so as to permit, as of right, the construction of the stables. The Jockey Club then petitioned the trial court to dissolve the injunction based upon the change in zoning classification. The injunction was dissolved and the neighboring residential property owners appealed. This Court, in deciding that the original enactment of the zoning ordinance had created no property rights in the abutting residential property owners, stated:

"In order to impose restrictions some valid exercise of the police power must be proven. But such power is invoked for the protection of the property restricted and *not to give protection to surrounding property.* It is basic to the law of property that a man shall be allowed the widest use of his property consonant with the protection of his neighbors. In order to justify therefore the restriction of that use, it must be shown that such restriction is in some manner related to the police power of the sovereign.

"The imposition of that restriction, however, creates no vested [*property*] right [in neighboring property owners] in the continuance of that [previous zoning] condition [on the properties of the applicant].

"Since, therefore, appellants [neighboring property owners] acquired no vested [property] right under the original Zoning Ordinance, it follows that the amending ordinance placing neighboring properties in a lower classification, and to that extent freeing such properties from the burdens of

the original ordinance, deprives appellants [neighboring property owners] of no legal rights inasmuch as it takes nothing from them that they have a right to insist upon." (Emphasis added.)

*Chayt v. Maryland Jockey Club,* 179 Md. at 395, 18 A.2d at 858–59.

The issue has been indirectly addressed in at least one other state. The issue was presented in *Weaver v. Bishop,* 174 Okla. 492, 52 P.2d 853 (1935), like *Chayt,* a case for injunctive relief by adjoining property owners, in respect to the uses being made of property for which a building permit had been used. As in the instant case, the matter of the absence of notice of the issuance of the permit also was presented in that the time for appeal had expired before the adjoining property owners discovered the use. There the Supreme Court of Oklahoma held:

"The plaintiffs further allege that if it be construed that the defendant has a good and valid permit to construct said filling station, and that plaintiffs are barred from appealing the action of the said building inspector ... that plaintiffs will be deprived of their property without due process of law....

. . .

"[D]efendants allege that said zoning ordinance was duly passed and approved in the manner required by law, after due notice to property owners, and that the plaintiffs had the right at all times to make application to the legislative body ... to amend the said ordinance, and could ... have submitted ... all the questions and objections now sought to be presented ... that plaintiffs under said ordinance have no right to an appeal to the action of the building inspector in granting the permit herein, and that if the plaintiffs had any such right to appeal, that such right was lost in that the appeal was not taken within the time prescribed.

. . .

"The plaintiffs' response is in substance that the building permit issued to the defendant ... was void for want of

notice to the plaintiffs.... "The evidence is that no notice ... was given either of the plaintiffs, and that the plaintiffs had no knowledge of same until after the expiration of more than ten days [the appeal period]. The zoning ordinance ... does not provide for such notice....

"The record does not disclose that under the ordinance of Tulsa that notice to other parties is required generally in obtaining municipal permits, and the rule is that, where no notice is required, failure to give notice does not affect the validity of the permit.

"The function of municipal building permits is to evidence compliance with the applicable ordinances and regulations and that the proposed construction meets building requirements. 'Where the prerequisite conditions have been complied with on the part of the applicant, the Board or official may have no discretion to refuse the permit for some reason other than a noncompliance with the conditions precedent; and such an applicant may invoke the aid of the court to prevent the unreasonable refusal and to compel the granting of the permit.' *The issuance of such a permit is not ordinarily an adjudication of the property rights of third persons.*" (Citations omitted.) (Emphasis added.)

*Weaver v. Bishop*, 52 P.2d at 856–58.

If any such property rights exist when a permitting ordinance does not require notice, they must be discovered in background principles of property law.[22] Actual physical invasions of one's property may be addressed by suits in eject-

---

**22.** The term "background principles of the State's law of property and nuisance" came into the modern language of real property in the often cited case of *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1029, 112 S.Ct. 2886, 2900, 120 L.Ed.2d 798 (1992), where, in a regulatory "takings" context, the Court noted:

"Any limitation so severe cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership. A law or decree with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts-by adjacent

ment, perhaps trespass, in respect to title-actions to quiet title and the like. None of these situations appear to exist in the present case. Some actions that might exist relating to uses of adjacent property include, and primarily are related to, actions to abate private nuisances. In *Prah v. Maretti*, 108 Wis.2d 223, 232, 321 N.W.2d 182, 187 (1982), that Court restated the concept that applies in Maryland as well: "The private nuisance doctrine has traditionally been employed ... to balance the conflicting rights of landowners...." [23]

Private nuisances, moreover, are not a normal element of rights arising out of the issuance of building permits even when notice requirements exist, and private nuisances, if they exist, normally do so independently of the issuance of any public permits. Generally, they cannot be litigated in a petition for judicial review of administrative agency actions.

The cases before this Court, giving rise to the single question properly before us, are both administrative petitions for review. Neither of them is a request for abatement of nuisances.[24]

## IV. Conclusion

We hold that where, such as in this case, the relevant statute applicable to the issuance of permits as a ministerial

---

landowners (or other uniquely affected persons) under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise."

**23.** At one time in England as a part of nuisance law, the Doctrine of Prior Appropriation and the Doctrine of Ancient Lights applied. The former held that the first user to appropriate a resource had the right to the continued use of the resource. The latter held that if a "landowner had received sunlight across adjoining property for a specified period of time, the landowner was entitled to continue to receive unobstructed access to sunlight across the adjoining property." *Prah*, 108 Wis.2d at 233, 321 N.W.2d at 188 (footnote omitted). Even if these doctrines survived in this country. It is doubtful that they would apply to the construction of amateur radio towers, such as these in the case *sub judice*.

**24.** We are informed that actions, other than this action in respect to a review of administrative decision, are pending and have been stayed below, awaiting the outcome of this action.

act does not require the service of actual, personal notice to adjacent or neighboring property owners, the failure to do that which is not required to be done is not a denial of due process. We hold further that, generally, the issuance of building permits and similar permits are ministerial acts. Finally, we hold, as a matter of law, that the issuance of building permits to the owner of one property for construction on that property, creates no additional property rights in adjoining or neighboring property owners. Accordingly, we reverse that part of the Court of Special Appeals' judgment that remanded the case to the Board of Appeals to receive evidence in respect to whether the issuance of the building permit infringed upon the respondents' "property rights." The judgment of the Court of Special Appeals as to the non-renewal (via the sediment control permit) of the building permit and the timeliness or lack thereof is otherwise affirmed. The result of our holding is that the decision of the Board of Appeals of Montgomery County is to be affirmed.

**THE DECISION OF THE COURT OF SPECIAL APPEALS IS REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH DIRECTIONS TO AFFIRM THE DECISION OF THE BOARD OF APPEALS OF MONTGOMERY COUNTY; COSTS TO BE PAID BY RESPONDENTS.**